1   MARK A. CHAVEZ (Bar No. 90858)
    KATHRYN C. PALAMOUNTAIN (Bar No. 183246)
2   CHAVEZ & GERTLER LLP
    42 Miller Ave.
3   Mill Valley, CA 94941
    Phone: 415.381.5599
4   Facsimile: 415.381.5572

5   MARVIN A. MILLER (admitted N.D. Cal.)
    ANTHONY F. FATA (pro hac vice)
6   MILLER FAUCHER AND CAFFERTY LLP
    30 North LaSalle Street, Suite 3200
7   Chicago, Illinois 60602
    Phone: 312.782.4880
8
    ASHER RUBIN (Bar No. 33188)
9   139 Trinidad Drive
    Tiburon, CA 94920
10  Phone:  415.435.7444

11              **UNITED STATES DISTRICT COURT FOR THE**
                  **NORTHERN DISTRICT OF CALIFORNIA**
12                    **SAN FRANCISCO DIVISION**

13

14  KAREN ROBERTS, as Trustee of the Trust of          Case No: 3:03-cv-02397
    Lloydine Ann Reese, AND TERRA SAKS-
15  YOUNG, on behalf of themselves, all others         HONORABLE SAMUEL CONTI
    similarly situated, and the general public,
                                                        **FIRST AMENDED COMPLAINT FOR**
16                Plaintiffs,                           **DAMAGES, DECLARATORY AND**
                                                        **INJUNCTIVE RELIEF, AND**
17                v.                                    **RESTITUTION**

18  NORTH AMERICAN VAN LINES, INC., a                  DEMAND FOR JURY TRIAL
19  Delaware Corporation,
                                                        CLASS ACTION
20                Defendant.

21

22

23

24

25

26

27

28

1       Karen Roberts, as trustee of the Trust of Lloydine Ann Reese ("Mrs. Reese"), and

2 Plaintiff Terra Saks-Young ("Mrs. Saks-Young") (collectively "Plaintiffs"), individually, on

3 behalf of a class of similarly situated persons, and on behalf of the general public allege the

4 following against Defendant North American Van Lines, Inc. ("Defendant"):

5                                      **NATURE OF THE ACTION**

6       1.      This is a class action arising from Defendant's widespread, deceptive pattern and

7 practice of baiting consumers of moving services with reasonable, written estimates, switching

8 the charges to artificially-inflated amounts, and holding consumers' household belongings

9 hostage until the artificially-inflated amounts are paid. Plaintiffs sue for breach of contract

10 (Count I), violation of the Consumer Legal Remedies Act (Count II), violation of the Business

11 and Professions Code (Count III) and violation of federal rules and regulations governing

12 household movers under the non-exclusive, cumulative remedy contained in 49 U.S.C. § 14704

13 (Count IV).

14       2.      Defendant provides consumers in the market for moving services with pre-move

15 written estimates that set forth the estimated cost of their move (the "Estimated Charge"), which

16 is based in large part on the estimated weight of the belongings to be moved (the "Estimated

17 Weight"). Consumers use these estimates to shop around and find the most suitable moving

18 company.

19       3.      To prevent abusive practices, federal and state laws and regulations provide

20 several different safeguards for consumers. In particular, written estimates provided by moving

21 companies must be "reasonably accurate," consumers must be given notice of when their

22 belongings will be weighed to determine the actual charge so that they have a reasonable

23 opportunity to attend the weighing (the "Notice of Weighing Requirement"), and consumers'

24 belongings must be delivered upon payment of the Estimated Charge plus 10% (the "110%

25 Limit"). Defendant incorporates these requirements into the terms of its contracts with

26 consumers. This lawsuit arises from Defendant's widespread practice of ignoring these

27 requirements in a deceptive, unlawful and unfair manner.

28

1      4.     During the summer of 2002, Mrs. Reese had to move her daughter's belongings

2  from California to Florida. Mrs. Reese received a written estimate from Defendant in which

3  Defendant represented that it would move her daughter's belongings for $3,028.50 based on the

4  estimated weight of 3,500 pounds. Defendant provided the written estimate after its agent had an

5  opportunity to inspect the belongings Mrs. Reese was moving. Satisfied with the estimate, Mrs.

6  Reese hired Defendant on the moving day. Defendant loaded her daughter's belongings onto its

7  truck. Defendant subsequently informed her that she would have to pay $6,172.53 (more than

8  twice the written estimate) because her daughter's belongings "actually" weighed 8,180 pounds

9  (more than twice the written estimate). Defendant failed to provide Mrs. Reese with the required

10 Notice of Weighing.

11      5.     Mrs. Reese refused to pay the artificially inflated amount amount, citing the

12 written estimate. Defendant threatened to haul her daughter's belongings to an unknown storage

13 facility, charge her "unloading" and "daily storage" fees, and ultimately auction her daughter's

14 belongings if it did not receive full payment of the $6,172.53 plus unloading and storage fees. In

15 order to secure delivery of her daughter's personal belongings, Mrs. Reese paid the $6,172.53

16 under protest.

17      6.     During the summer of 1999, Mrs. Saks–Young had to move her entire home from

18 California to Massachusetts after her husband passed away. Defendant provided a written

19 estimate to Mrs. Saks-Young indicating that it would move her belongings for $3,444.16 based

20 on the estimated weight of 5,000 pounds. Defendant provided the written estimate after its agent

21 inspected the belongings in Mrs. Saks-Young's home. On the moving day, Defendants' agents

22 informed Mrs. Saks-Young that the "actual" cost of her move would be three times the Estimated

23 Charge because the "actual" weight of her belongings was three times the amount shown in the

24 estimate. Defendant's agents reached this conclusion before moving a single item. Mrs. Saks-

25 Young stated that she would refuse to pay this amount, citing Defendant's written estimate.

26 Defendant's agents insisted that the amount would be three times the amount shown in the

27 estimate. Mrs. Saks-Young instructed them not to move her belongings. She had to leave her

28

2

1  home to take care of unrelated matters. When she returned, she learned that Defendants' agents
2  had loaded up her belongings and taken them away.

3      7.    A few days later, Defendant informed Plaintiff that her belongings were in
4  Massachusetts and that the "actual" cost of her move was $9,000.00 (almost three-times the
5  Estimated Charge) because the "actual" weight of her belongings was 9,200 pounds (almost
6  twice the estimated weight). Mrs. Saks-Young has repeatedly offered to pay the Estimated
7  Charge plus 10%. Defendant has repeatedly failed or refused to deliver her household
8  belongings and has continued to assess various "unloading" and "storage" charges against Mrs.
9  Saks-Young. Defendant even threatened to auction her belongings to third parties, but Plaintiff,
10 acting *pro se*, obtained a limited injunction blocking the auction (no matter is currently pending).
11 Defendant now claims that Mrs. Saks-Young owes in excess of $26,000.00 (more than eight-
12 times the Estimated Charge) for transportation, unloading and storage costs and has refused to
13 deliver the contents of her family home.

14     8.    Plaintiffs' experiences were not unique. They and other members of the Class
15 were victimized by Defendant's bait-and-switch and other deceptive, unlawful and unfair
16 practices. As Plaintiffs' experiences demonstrate, Defendant uses its Estimate Forms as a bait-
17 and-switch tactic. Once the consumer's goods are aboard its truck, it ignores the parameters set
18 forth in the Estimate Form and coerces a greatly inflated charge (the "Inflated Final Charge")
19 that bears no reasonable relationship to the Estimated Charge. Defendant does so through a
20 series of unlawful and unfair practices.

21     9.    Defendant – as a uniform practice – fails to provide consumers with notice of
22 when and where their goods will be weighed ("Notice of Weighing"), a practice that violates
23 federal law (the "Notice of Weighing Requirement") and the terms of Defendant's Professional
24 Movers' Commercial Relocation Tariff ("Defendant's Tariff"). This practice facilitates further
25 deception. At weigh stations, Defendant engages in deceptive practices such as "weight-
26 bumping," i.e., recording an inflated weight (the "Inflated Weight") on the weigh ticket and final
27 bill that bears no reasonable relationship to the actual weight of the consumer's goods or the

28

3

1  weight set forth in the Estimate Form used to procure the consumer's business.

2      10.    Prior to delivery, Defendant – as a further uniform practice – takes the position
3  that consumers are required to pay the entire Inflated Final Charge before their goods are
4  delivered and does not abide by the 110% Limit.  To coerce consumers into paying its
5  unlawfully Inflated Final Charges, Defendant states that if consumers do not pay the full amount,
6  their belongings will be unloaded and placed into storage, they will be charged an unloading and
7  storage fee, and, if they do not pay these fees and the Inflated Final Charge, their goods will be
8  auctioned off to third parties.

9                                        **PARTIES**

10     11.    This lawsuit was originally initiated by Lloydine Ann Reese.  At the time the
11  original complaint was filed, Mrs. Reese was a 74-year old widow who is, and at all times
12  relevant hereto was, a resident of California.  Since the filing of the original complaint, Lloydine
13  Ann Reese passed away.  Her daughter, Karen Roberts, is the trustee of the Trust of Lloydine
14  Ann Reese and has agreed to serve as a class representative in this case.

15     12.    Plaintiffs Terra Saks-Young is a 57 year-old widow living on a fixed income.
16  When her belongings were originally moved by Defendant, Mrs. Saks-Young resided in
17  California.  She now resides in Massachusetts and has agreed to serve as a class representative in
18  this litigation.

19     13.    Defendant North American Van Lines, Inc. is a Delaware corporation, based in
20  Fort Wayne, Indiana, that has designated its principal place of business in California as
21  Burlingame, a city in San Mateo County and within the Northern District of California.
22  Defendant is a "world leader" in moving services and one of the nation's largest moving
23  companies.  Defendant employs more than 1,114 agents, 4,000 employees and 6,000 drivers.  In
24  1999, its revenues exceeded $720 million.

25                              **JURISDICTION AND VENUE**

26     14.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as one of the
27  causes of action arises under federal law.  Jurisdiction over the state law causes of action is

28

4

1 | proper in this Court pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367.

2 |     15.    Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391. Venue

3 | for the Consumers Legal Remedies Act claim is proper in this Court pursuant to California Civil

4 | Code § 1780(c) on the grounds that Defendant does business in counties in the Northern District

5 | and that many of the transactions from which this action arises occurred in counties in the

6 | Northern District. Mrs. Reese's Declaration of Venue pursuant to California Civil Code §

7 | 1780(c) was previously filed with this Court.

8 |              **CLASS ACTION AND PRIVATE ATTORNEY GENERAL ALLEGATIONS**

9 |     16.    Plaintiffs brings this action on behalf of the following Class pursuant to Rules

10 | 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, California Civil Code § 1781 and

11 | California Code of Civil Procedure § 381:

12 |     All persons and entities throughout the United States and its territories who
      contracted with North American Van Lines, Inc. ("North American") to move
13 |   goods during the period May 21, 1999 to the present (the "Class Period") and who
      (i) were required by North American to pay a final charge that exceeded 110% of
14 |   the pre-move Estimated Charge of services before North American would deliver
      their goods or (ii) did not pay an amount greater than 110% of the pre-move
15 |   Estimated Charge and whose goods are in North American's possession, custody
      or control. This Class includes a "Senior Citizen Sub-Class" consisting of all
16 |   members of the Class who are 65 years of age or older.

17 |     Excluded from the Class are Defendant and its officers and directors.

18 |     17.    Members of the Class are readily ascertainable. Upon information and belief,

19 | Defendant's records pertaining to Estimated Charges, Inflated Final charges and complaints

20 | relating to the Notice of Weighing Requirement and the 110% Limit will identify consumers

21 | who either were required to pay more than 110% of the Estimated Charge prior to delivery as a

22 | result of Defendant's unlawful, unfair and deceptive practices or whose belongings are still in

23 | Defendant's possession, custody or control as the result of their not paying the Final Inflated

24 | Charge.

25 |     18.    Members of the Class are so numerous that joinder is impracticable. Plaintiffs

26 | allege, upon information and belief, that discovery will demonstrate that Defendant's unlawful,

27 | unfair and deceptive practices in connection with the Notice of Weighing Requirement and the

28 |

FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND RESTITUTION

1  110% Limit affected thousands of Defendant's customers.  According to CBS News, about 40
2  million Americans move each year.
3  www.cbsnews.com/stories/2001/07/26/earlyshow/saturday/main303588.shtml.  The moving practices
4  complained of herein were the subject of a two-part CBS Evening News special on the moving
5  industry entitled "Hands Tied on Moving Scams" and "Moving Can Make You A Target."  See
6  www.cbsnews.com/stories/2002/06/18/eveningnews/main512609.shtml;
7  www.cbsnews.com/stories/2002/06/19/eveningnews/main512733.shtml.  The Department of
8  Transportation estimates that it receives 4,000 complaints per year regarding practices such as
9  those alleged herein, and the Council of Better Business Bureaus estimates that it receives more
10  than 5,000 complaints per year regarding practices such as these.  These estimates are likely just
11  the tip of the iceberg, considering most aggrieved consumers likely do not contact these entities.

12       19.     Questions of law or fact common to the Class predominate.  There is a well-
13  defined community of interest.  The Class' claims arise from the same core practices and policies
14  of Defendant, including its failure to abide by the terms set forth in its Estimate Forms and
15  Tariff, its failure to provide consumers with Notice of Weighing, and its refusal to abide by the
16  110% Limit.  Members of the Class like Mrs. Reese whose payments exceeded the 110% Limit
17  have a common interest in obtaining compensatory damages equal to amounts paid in excess of
18  the 110% Limit.  Members of the Class like Mrs. Saks-Young whose belongings are being held
19  hostage by Defendant have a common interest in obtaining an injunction requiring Defendant to
20  relinquish their belongings, damages and other relief.  Common questions include without
21  limitation:

22       1.     Whether Defendant's policy of holding its agents out as being skilled and
23            experienced in providing written estimates constitutes an unfair, unlawful or
24            deceptive practice;

25       2.     Whether Defendant's failure to provide reasonably accurate estimates constitutes
26            an unlawful, unfair or deceptive practice as well as a breach of its contractual
27            obligations;

28

6

3.   Whether Defendant's policy of not abiding by the Notice of Weighing Requirement constitutes an unfair, unlawful or deceptive practice as well as a breach of Defendant's contractual obligations;

4.   Whether Defendant's policies and practices in connection with the Weighing and determining and recording the supposed actual weight (i.e., the Inflated Weight) constitute unfair, unlawful or deceptive practices;

5.   Whether Defendant's Inflated Final Charges are unlawful, unfair or deceptive;

6.   Whether Defendant's policy of refusing to deliver customer's goods until receiving the full amount of the Inflated Final Charge, including amounts which exceed the 110% Limit is unlawful, unfair, deceptive or contrary to Defendant's contractual obligations; and,

7.   Whether Defendant formulated and implemented a nationwide policy to withhold delivery of consumers' belongings until receiving payment of improper and excessive charges above and beyond the 110% Limit;

8.   Whether Defendant is liable to the Class for damages or restitution stemming from the practices alleged herein; and

9.   Whether Defendant should be required to deliver the belongings of consumers that it is withholding on the grounds that they have failed to pay charges beyond the 110% Limit.

20.   Plaintiffs' claims are typical of the Class. Plaintiffs, like all members of the Class, were victimized by Defendant's practices regarding its estimates, the weighing, the Notice of Weighing, Inflated Final Charges, and the 110% Limit. Plaintiffs are not subject to affirmative defenses or material facts peculiar only to them.

21.   Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are not antagonistic to those of the Class. Plaintiffs' attorneys are experienced and competent in the prosecution of complex consumer class actions.

22.   The class action device will provide substantial benefits to the Class. It will

7

1  permit a large number of similarly situated individuals and entities to prosecute their common
2  claims in a single forum simultaneously, efficiently, and without unnecessary duplication of
3  evidence, effort and expense that numerous individual actions would engender.  It will permit the
4  prosecution of claims that may not be practical to prosecute on an individual basis.  The
5  substantial benefits of proceeding through the class mechanism substantially outweigh any
6  potential difficulties that may arise in the management of this class action.

## FACTS

### I.    ANN REESE.

9        23.    In July 2002, Mrs. Reese sought to move some of her daughter's belongings from
10  California to Florida.  She contacted multiple moving companies to provide her with estimates.
11  On or about July 29, 2002, Defendant sent an "experienced" "Private Relocation Director,"
12  Dennis E. Reynolds, to inspect the belongings and to provide Mrs. Reese with an estimate.  After
13  the inspection, Reynolds informed Mrs. Reese that her belongings weighed an estimated 3,000
14  pounds.  Subsequently, Mrs. Reese added a few items (including a heavy tool chest).

15        24.    On or about August 26, 2002, Reynolds inspected the goods, including the
16  additional items, and estimated their weight at 3,500 pounds, consistent with his earlier estimate.
17  Federal regulation required that Defendant's non-binding estimate be "reasonably accurate."  49
18  C.F.R. § 375.3(b)("Non-binding estimates shall be reasonably accurate.").

19        25.    Mrs. Reese contracted with Defendant to ship her daughter's belongings from
20  California to Florida.  Defendant provided Mrs. Reese with an Estimate Form and other blank
21  and incomplete documents for her to sign.  The Estimate Form listed the Estimated Weight as
22  3,500 pounds and the Estimated Charge at $3,028.50.  Defendant did not intend to honor this
23  estimate.  Defendant used the Estimate Form to "bait" Mrs. Reese into contracting with
24  Defendant based on a low or reasonable Estimated Charge that later would be "switched" to an
25  extortionate, Inflated Final Charge once Defendant took possession of Mrs. Reese's daughter's
26  belongings.

27        26.    On or about August 27, 2002, Defendant loaded the belongings onto a moving
28

8

1  truck. Defendant took the truck to a weigh station for the Weighing. Defendant did not provide

2  Mrs. Reese with notice of the time or place of the weighing. Its failure to do so violated 49

3  C.F.R. § 375.7, which contains the Notice of Weighing Requirement:

4        The shipper or any other person responsible for payment of the freight charges
         [i.e., the consumer] shall have the right to observe all weighings of the shipment.
5        The carrier [i.e., Defendant] must advise the shipper or any other person entitled
         to observe the weighings of the time and specific location where each weighing
6        will be performed and must give that person a reasonable opportunity to be
         present to observe the weighings. Waiver by a shipper of the right to observe any
7        weighing or reweighing is permitted and does not affect any rights of the shipper
         under these regulations or otherwise.
8

9  49 C.F.R. § 375.7(a)(7). The Notice of Weighing requirement has the practical effect of

10 preventing opportunities for Defendant to commit deceptive weighing practices. Defendant's

11 failure to provide notice of weighing also constituted a breach of Defendant's Tariff (attached as

12 Exhibit A), which states, in pertinent part:

13       The shipper [i.e., the customer] or any other person responsible for payment of the
         freight charges shall have the right to observe all weighing of the shipment. The
14       carrier [i.e., Defendant] must advise the shipper or any other person entitled to
         observe the weighing of the time and specific location where each weighing will
15       be performed and must give that person a reasonable opportunity to be present to
         observe the weighing.
16

17 Exhibit A (Defendant's Tariff, Section 1, Item 4(2)(g)).

18       27.    After the weighing, Defendant informed Mrs. Reese that her goods weighed 8,180

19 pounds – more than twice the Estimated Weight of 3,500 pounds. Based on this weight,

20 Defendant informed Mrs. Reese that her final charge would be $6,172.53 – more than twice

21 (203%) the Estimated Charge of $3,028.50.

22       28.    Mrs. Reese informed Defendant that she would not pay the Inflated Final Charge

23 or any amount substantially greater than the Estimated Charge set forth in her Estimate Form,

24 attached hereto as Exhibit B. Defendant told Mrs. Reese that it would not deliver her goods until

25 it received the full $6,172.53. Defendant's position contradicted the Estimate Form provided to

26 Mrs. Reese, which promised delivery upon receipt of 110% of the Estimated Charges:

27       If the actual tariff charges [i.e., the charges based on the actual weight as opposed
         to the estimated weight] for the services and articles listed on this Estimated
28

9

FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND RESTITUTION

Charge of Services and the accompanying Estimate Inventory Summary exceed $3,028.50, the carrier [i.e., Defendant] will deliver the shipment upon request for $3,331.35 [i.e., 110% of the estimate] or the actual charges, whichever is less, plus payment in full for any services not shown in the estimate. You [i.e., the consumer] are obligated to pay the balance, if any, within 30 days after delivery.

Exhibit B (Estimate Form). The 110% Limit set forth in Defendant's Estimate Forms is mandated by federal regulation, 49 C.F.R. § 375.3, which provides in pertinent part:

Maximum charges required to be paid at time of delivery on collect on delivery shipments subject to non-binding estimates of approximate costs. At time of delivery of a collect on delivery shipment, … on which a non-binding estimate of the approximate cost has been furnished by the carrier [i.e., Defendant] …, the shipper [i.e., the consumer] may request delivery of the shipment upon payment, in a form acceptable to the carrier, of an amount not exceeding 110 percent of the estimated charges. The carrier [i.e., Defendant] shall, upon request of the shipper, relinquish possession of the shipment upon payment of not more than 110 percent of the estimated charges and shall defer demand for the payment of the balance of any remaining charges for a period of 30 days following the date of delivery.

Defendant also sets forth the 110% Limit in Defendant's Tariff. Exhibit A (Section 1, Item 20(c)). The 110% Limit has the practical effect of providing customers with 30 days to avoid excessive charges (or force Defendant to justify charges in excess of the Estimated Charge) without fear that their household belongings will be held hostage or sold to third parties. By ignoring the 110% Limit, Defendant eliminates any meaningful opportunity for the consumer to contest charges.

29.     Rather than deliver Mrs. Reese's daughter's belongings, Defendant threatened to place them in storage and charge Mrs. Reese an unloading fee and daily storage fee. Defendant also threatened to auction her daughter's belongings if she did not pay the full amount of the Inflated Final Charge as well as additional unloading and daily storage fees. Mrs. Reese, believing that her daughter's belongings would be placed in expensive storage facilities and potentially sold to third parties, was coerced into paying the Inflated Final Charge of $6,172.53. Of this, more than $2,800.00 was in excess of the 110% Limit. The disparity between the Estimated Charge and the Inflated Final Charge was $3,144.03. Because of Defendant's unlawful, unfair and deceptive practices, and coercive tactics in holding her belongings hostage, Mrs. Reese was not given a meaningful opportunity to contest this gross disparity.

30.     Mrs. Reese attempted to obtain a refund through letters sent to North American's

10

1  customer service department on October 16, 2002 and November 29, 2002. Defendant refused

2  any refunds in an October 21, 2002 letter written by Defendant's agent and Senior Consumer

3  Service Coordinator, Dorothy A. Haywood (attached as Exhibit C), and a December 18, 2002

4  letter written by Defendant's agent and Customer Service Coordinator, Denna Clodfelter

5  (attached as Exhibit D).

6       31.    Mrs. Reese's experience was not unique. In both letters, Defendant audaciously

7  admitted that its uniform practice is to ignore the Notice of Weighing Requirement and the 110%

8  Limit. Exhibits C and D.

9  **II.    MRS. SAKS-YOUNG.**

10       32.    In late July 1999, following her husband's death, Mrs. Saks-Young had to move

11  from California to Massachusetts. She contacted several moving companies for estimates,

12  including Defendant. Defendant sent its agent, Scott Morrison, to inspect Mrs. Saks-Young's

13  home. On or around July 27, 1999, Morrison provided a written estimate, providing that the

14  Estimated Charge pf Mrs. Saks-Young's move was $3,444.16 based on the Estimated Weight of

15  5,000 pounds. (Exhibit E). Mrs. Saks-Young agreed to hire North American based on this

16  written estimate.

17       33.    On or around August 3, 1999, Defendant sent two agents to move Mrs. Saks-

18  Young' belongings. Before loading anything (and well-before any weighing) the driver of

19  Defendant's moving truck informed Mrs. Saks-Young that her move would cost three times the

20  written estimate because her belongings weighed more than twice the estimated weight. Mrs.

21  Saks-Young protested that she would not pay any more than the Estimated Charge plus 10% In

22  response, Defendant's driver implicitly threatened the safety of Mrs. Saks-Young's belongings.

23  Mrs. Saks-Young instructed Defendant's agents to leave her belongings alone, instructed them

24  not to move her home, and stated that she intended to hire a different moving company.

25       34.    Mrs. Saks-Young contacted Defendant's agent, who informed her that, once the

26  driver arrives at the home, all disputes must be handled through Defendant's 1-800 customer

27  service number. Mrs. Saks-Young left messages on the 1-800 number informing Defendant that

28

11

1 she did not want it conducting her move. Mrs. Saks-Young left her home to attend to other
2 matters related to her move. When she returned, the entire contents of her home and Defendant's
3 moving truck were gone. Mrs. Saks-Young never received a bill of lading or other
4 documentation indicating that her goods had been shipped.

5      35.    Mrs. Saks-Young left several messages with Defendant's 800 number to locate
6 her belongings. On or about August 6, 1999, one of Defendant's agents informed Mrs. Saks-
7 Young that her belongings were in Hyannis, Massachusetts, that the "actual weight" of her
8 belongings was 8,000 pounds, and that the "actual cost" of her move would be based on this
9 "actual" weight. Mrs. Saks-Young never received any notice of weighing and was not given a
10 meaningful opportunity to attend the weighing. Mrs. Saks-Young protested this artificially
11 inflated amount, stated that she would only pay the Estimated Charge plus 10%, and demanded
12 the opportunity to see her belongings reweighed. She and Defendant agreed that the reweighing
13 would take place on August 13, 1999 and that Plaintiff would obtain her household belongings
14 upon payment of the Estimated Charge plus 10%.

15     36.    On or around August 13, 1999, Defendant's agent informed Mrs. Saks-Young that
16 Defendant had reweighed her belongings (again, without her knowledge), that their "actual"
17 weight was 9,200 pounds, and that the "actual" cost of her move would be more than $9,100.00.
18 When Mrs. Saks-Young went to Hyannis, Massachusetts to see her belongings and try to obtain
19 them for the Estimated Charge plus 10%, she found out that they were gone. Defendant's agent
20 informed Plaintiff that they had been shipped to Connecticut for no explainable reason.

21     37.    Defendant's attempt to charge Plaintiff $9,100.00 as a condition of delivery was
22 contrary to the 110% Limit, Defendant's Tariff, as well as the Estimate Form that Mrs. Saks-
23 Young received. In particular, Defendant's Estimate Form stated: "Total tariff charges may
24 exceed this estimate by more than 10%. If this happens, North American will give you your
25 shipment at the delivery address if you pay the estimated charges plus 10%."

26     38.    On or around August 16, 1999, Mrs. Saks-Young learned that Defendant had
27 unloaded and was storing her belongings in Norwalk, Connecticut, at the offices of Defendant's

28

12

1 | agent, Ken Close. Close stated that he had no knowledge of Mrs. Saks-Young' horrific moving
2 | experience, but that he would release her belongings for the "actual" cost of the move,
3 | $9,100.00, plus the cost of the reweighing that took place on or about August 13, 1999, plus
4 | unloading and storage fees. Mrs. Saks-Young refused to pay this extortionate amount.

5 |        39.    In September 1999, Mrs. Saks-Young wrote a letter to the office of Defendant's
6 | President in Fort Wayne, Indiana, explaining her problems to date, informing Defendant that
7 | possession of her personal belongings was critical to her and her family's personal and financial
8 | well-being, and requesting that Defendant relinquish her possessions for the Estimated Charge.
9 | Defendant refused.

10 |        40.    In January 2000, one of Defendant's agents who worked with its President
11 | informed Mrs. Saks-Young that her belongings would be auctioned and that those items that
12 | could not be auctioned would be thrown away.

13 |        41.    In February 2000, another of Defendant's agent, through Richard Rook, an
14 | attorney, informed Mrs. Saks-Young that Defendant had a lien on her belongings, that if she did
15 | not pay the "actual" moving cost of $9,100.00, plus unloading and storage fees, which brought
16 | the total to $12,000.00, her and her family's belongings would be auctioned. In March 2000,
17 | Rook reiterated Defendant's threat that Mrs. Saks-Young' belongings would be auctioned. Mrs.
18 | Saks-Young, acting *pro se*, obtained a limited temporary injunction from a state court judge in
19 | Dedham, Massachusetts that barred Defendant's agent from auctioning Plaintiff's belongings.
20 | There currently is no matter pending in Dedham, Massachusetts related to the claims asserted
21 | herein.

22 |        42.    Since that time, Mrs. Saks-Young has repeatedly attempted via letter and phone
23 | call to obtain her belongings for the Estimated Charge plus 10%, and Defendant has repeatedly
24 | refused. Most recently, Defendant's agents in Fort Wayne, Indiana informed Plaintiff that her
25 | total charges, including the "actual" cost of the move, plus unloading and storage costs, exceeded
26 | $26,000.00. Defendant's unlawful, unfair, and deceptive conduct and retention of the entire
27 | contents of Mrs. Saks-Young's family home have caused her significant distress and damages.

28 |

13

## FIRST CAUSE OF ACTION
### (Breach of Contract)

43.   Plaintiffs reallege and incorporate by reference herein paragraphs 1-42.

44.   Defendant's calculated and uniform practices constituted breaches of contracts.

45.   Defendant entered into binding and enforceable contracts with Plaintiffs and the Class. The contracts consist of the Estimate Forms (*e.g.*, Exhibits B and E) together with the Bills of Lading (*e.g.*, Exhibit D), as well as Defendant's Tariff (Exhibit A). Plaintiffs and the Class performed their obligations under these contracts. Defendant's practices alleged herein constituted breaches of these contracts, thereby causing damages to Plaintiffs and the Class.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully pray as set forth below.

## SECOND CAUSE OF ACTION
### (Violations of the Consumers Legal Remedies Act, California Civil Code § 1750, et seq.)

46.   Plaintiffs reallege and incorporate by reference herein paragraphs 1-45.

47.   The Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq., was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in California Civil Code § 1770 that are prohibited in any transaction intended to result in the sale or lease of goods or services to a consumer.

48.   At all relevant times, Plaintiffs and members of the proposed Class were consumers as that term is defined in California Civil Code § 1761(d). The unlawful practices of Defendant herein alleged are part of its performance pursuant to shipping services, and part of transactions covered by the CLRA under California Civil Code § 1761(e).

49.   Defendant's calculated and uniform policies and practices that violate the CLRA include, without limitation, the following: holding its agents out as being qualified to render reasonably accurate estimates when in fact they are not; rendering Estimated Charges with the intent to not deliver consumers' goods upon receipt of amounts equal to the Estimated Charges;

14

1 | ignoring the Notice of Weighing Requirement and guidelines applicable to weighing consumers'
2 | goods; recording inflated weights and exacting inflated final charges to obtain amounts in excess
3 | of the estimated charges; ignoring the 110% Limit; representing that it will deliver consumers'
4 | goods upon receipt of 110% of the estimated charge and then not doing so; and all other
5 | practices alleged herein that were unlawful, unfair and deceptive that induced Plaintiffs and the
6 | Class to enter into contracts, pay inflated final charges based on untrue and misleading
7 | information, or that caused Plaintiffs and the Class to be deprived of their belongings.

8 |      50.     The acts and practices of Defendant as hereinabove alleged violate the
9 | following provisions of the CLRA:

10 |      1.     California Civil Code § 1770(a)(14), which prohibits "representing that a
11 |            transaction confers or involves rights, remedies or obligations which it does
12 |            not have or involve, or which are prohibited by law";

13 |      2.     California Civil Code § 1770(a)(16), which prohibits "representing that the
14 |            subject of a transaction has been supplied in accordance with a previous
15 |            representation when it has not";

16 |      3.     California Civil Code § 1770(a)(18), which prohibits "misrepresenting the
17 |            authority of a salesperson, representative, or agent to negotiate the final terms
18 |            of a transaction with a consumer"; and,

19 |      4.     California Civil Code § 1770(a)(19), which prohibits "inserting an
20 |            unconscionable provision in the contract."

21 |      51.     Defendant's violations of California Civil Code §§ 1770(a)(14), (16), (18), and
22 | (19) present a continuing threat to members of the public in that Defendant is continuing to
23 | engage in the alleged practices, and will not cease until an injunction is issued by this Court.

24 |      52.     Pursuant to California Civil Code § 1782(d), Plaintiffs brings this cause of
25 | action for injunctive and declaratory relief. Contemporaneously with the filing of this the
26 | original Complaint in this matter, Mrs. Reese provided Defendant with notice of its
27 | violations and an opportunity to cure. Defendant did not cure its violations and, hence,

28 |

1    Plaintiffs' CLRA claims on behalf of themselves and the class seek damages as well as
2    injunctive and declaratory relief.

3          53.    Pursuant to California Civil Code § 1780, Plaintiffs brings this claim on behalf
4    of a proposed Class as hereinabove described.

5          54.    Defendant's practices constituted unfair or deceptive practices against "senior
6    citizens," as defined by California Civil Code § 3345. The CLRA provides for treble damages
7    for unfair or deceptive acts where: (a) the Defendant knew or should have known that its conduct
8    was directed to one or more senior citizens; or (b) senior citizens are substantially more
9    vulnerable than other members of the public to Defendant's conduct because of age, poor health
10   or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered
11   substantial economic damage resulting from the Defendant's conduct. California Civil Code §
12   3345(b). Defendant knew or should have known that its conduct was directed to one or more
13   senior citizens. Senior citizens were more vulnerable to Defendant's conduct and suffered
14   substantial economic damage.

15         55.    Pursuant to California Civil Code § 1780(d), Plaintiffs are entitled to an award
16   of attorneys' fees and costs.

17         WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully pray as set
18   forth below.

19                              **THIRD CAUSE OF ACTION**
                          **(Violations of the Unfair Competition Law,**
20                  **California Business and Professions Code § 17200, et seq.)**

21         56.    Plaintiffs reallege and incorporate by reference herein paragraphs 1-55.

22         57.    Beginning on an exact date unknown to Plaintiffs, but at all times relevant
23   herein, Defendant has committed acts of unfair competition proscribed by the UCL,
24   including the business practices alleged herein.

25         58.    Defendant's policies and practices resulted in its dissemination of untrue and
26   misleading information concerning its ability to render estimates, Estimated Weights, Estimated
27   Charges, the Notice of Weighing Requirement, the Recorded Weights, the Final Inflated

28
                                            16

1 Charges, and the 110% Limit that induced Plaintiffs and the Class to enter into contracts and pay
2 amounts that far exceeded amounts permitted by law and Defendant's contractual obligations.
3 Defendant knew or, in the exercise of reasonable care, should have known, that its statements
4 were misleading and untrue. Such conduct violated California's Unfair Competition Law
5 ("UCL"), California Business & Professions Code § 17200, et seq.

6     59.     The unlawful, unfair and/or fraudulent acts within the meaning of California
7 Business and Professions Code §17200 that Defendant has engaged in and is continuing to
8 engage in include, but are not limited to, the following:

9     1.    holding its agents out as being qualified to render reasonably accurate estimates
10         when in fact they are not;

11    2.    rendering Estimated Charges with the intent to not deliver consumers' goods upon
12         receipt of amounts reasonably approximating the Estimated Charges;

13    3.    ignoring the Notice of Weighing Requirement and guidelines applicable to
14         weighing consumers' goods;

15    4.    recording Inflated Weights and exacting Inflated Final Charges to obtain amounts
16         in excess of the Estimated Charges;

17    5.    ignoring the 110% Limit;

18    6.    representing that it will deliver consumers' goods upon receipt of 110% of the
19         Estimated Charge and then not doing so;

20    7.    breaching its contracts with customers;

21    8.    holding consumers' good hostage to induce payment of amounts in excess of the
22         110% Limit; and,

23    9.    all other practices alleged herein that were unlawful, unfair and/or deceptive or
24         that induced Plaintiffs and the Class to enter into contracts or pay Inflated Final
25         Charges based on untrue and misleading information, or that caused Plaintiffs and
26         the Class to be deprived of their personal belongings.

27    60.    The business acts and practices of Defendant, as hereinabove alleged, constitute

28

17

1 | unlawful business practices because the acts and practices violate federal laws, federal
2 | regulations, and the CLRA.

3 |      61.    The business acts and practices of Defendant, as hereinabove alleged, constitute
4 | unfair business practices in that said acts and practices offend public policy and are
5 | substantially injurious to consumers. Said acts and practices have no utility that outweighs
6 | their substantial harm to consumers.

7 |      62.    The business acts and practices of Defendant, as hereinabove alleged, constitute
8 | fraudulent business practices in that said acts and practices are likely to deceive the public and
9 | affected members of the general public as to their legal rights and obligations, and by use of
10 | such deception, may preclude consumers from exercising legal rights to which they are
11 | entitled.

12 |      63.    The unlawful, unfair and/or fraudulent business acts and practices of Defendant
13 | described herein present a continuing threat to members of the general public and to the Class
14 | in that Defendant is currently engaging in such acts and practices, and will persist and
15 | continue to do so unless and until an injunction is issued by this Court. Members of the
16 | general public lack an adequate remedy at law.

17 |      64.    As a direct and proximate result of the acts and practices, Defendant has
18 | received and collected substantial monies from its customers to which it is not entitled. It has
19 | wrongfully profited from the use of these revenues. Such amounts, including the profit
20 | Defendant made on the "ill-gotten gains," properly belong to the consumers who were
21 | affected by the business practices alleged hereinabove.

22 |      65.    The Court's intervention is necessary to halt and remedy Defendant's unlawful,
23 | unfair and/or fraudulent acts and practices.

24 |      66.    Pursuant to California Business and Professions Code §17203, the Court should
25 | issue an order enjoining Defendant from engaging in such acts and practices, ordering that
26 | Defendant relinquish belongings of Plaintiffs and the Class which it is improperly and
27 | wrongfully withholding, and ordering that Defendant provide appropriate restitution to all

28 |

18

1 | affected members of the general public.

2 | 67. Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to
3 | California Code of Civil Procedure § 1021.5.

4 | 68. Defendant's calculated and uniform policies and practices similarly violated the
5 | consumer fraud and unfair and deceptive business practice laws of various states throughout the
6 | United States.

7 | WHEREFORE, Plaintiff, on behalf of themselves, the Class, and the general public
8 | respectfully pray as set forth below.

9

## FOURTH CAUSE OF ACTION
### (Violations of 49 U.S.C. § 14704)

10

11 | 69. Plaintiffs reallege and incorporate by reference herein paragraphs 1-68.

12 | 70. Federal law: (1) requires Defendant to provide "reasonably accurate" estimates,
13 | 49 C.F.R. § 375.3(b); (2) prohibits Defendant from misleading consumers as to the actual rates
14 | or charges for the shipment of their goods, 49 U.S.C. § 13708; (3) prohibits Defendant from
15 | charging rates that exceed the rates allowed by its tariff, 49 U.S.C. § 14704(b); (4) prohibits
16 | Defendant from failing to provide Notice of Weighing except as to those consumers who
17 | affirmatively waive the right to receive such notice, 49 C.F.R. § 375.7(a)(7); and (5) prohibits
18 | Defendant from charging an amount greater than 110% the Estimated Charge as a pre-condition
19 | to delivery, 49 C.F.R. § 375.3(d). Defendant violated these laws, and Plaintiffs and the Class
20 | were damaged thereby.

21 | 71. Federal law provides that Plaintiffs and the Class may recover from Defendant all
22 | charges that exceeded the rates allowed by Defendant's Tariff, 49 U.S.C. § 14704(b), and all
23 | damages caused by its violations of the above-referenced statutes. 49 U.S.C. § 14704(a)(2).
24 | Defendant's practices alleged herein exceeded the rates allowed by Defendant's Tariff, violated
25 | federal law, and caused damage to Plaintiffs and the Class.

26 | 72. Defendant also is liable to Plaintiffs and the Class for costs and reasonable
27 | attorneys' fees. 49 U.S.C. § 14704(e).

28

19

73.     Federal law expressly states that the remedies provided in 49 U.S.C. § 14704 are cumulative to remedies existing under state or common law.  49 U.S.C. § 13103.

WHEREFORE, Plaintiff, on behalf of themselves and the Class, respectfully pray as set forth below.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves, the Class and the general public, pray:

1.     For an order certifying this case as a class action;

2.     For an order finding and declaring that Defendant's acts and practices as challenged herein are unlawful, unfair, and fraudulent;

3.     For an order preliminarily and permanently enjoining Defendant from engaging in the practices challenged herein;

4.     For an order of restitution to all affected members of the public in an amount to be determined at trial;

5.     For compensatory damages in an amount to be determined at trial, including without limitation treble damages for the Senior Citizen Sub-Class

6.     For pre-judgment interest to the extent permitted by law;

7.     For an award of attorneys' fees, costs and expenses incurred in the filing and prosecution of this action, pursuant to 49 U.S.C. § 1407(e), California Civil Code § 1780, California Code of Civil Procedure § 1021.5, and/or any other applicable provision of law; and,

8.     For such other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand, on behalf of themselves, the Class, and the general public a jury trial for all issues that may be so tried.

20

1 | DATED: November 5, 2003

Respectfully submitted,

CHAVEZ & GERTLER LLP

MILLER FAUCHER AND CAFFERTY LLP

ASHER RUBIN, ESQ.

By: _____
    Attorneys for Plaintiffs

## INDEX TO EXHIBITS

| | |
|---|---|
| Professional Movers' Commercial Relocation Tariff............................................. | A |
| Estimate Form and Bill of Lading (Reese)............................................................. | B |
| Letter dated October 21, 2002 from North American (Haywood) to Reese..................... | C |
| Letter dated December 18, 2002 from North American (Clodfelter) to Reese ................. | D |
| Estimated Charge of Services Form (Saks)............................................................ | E |